IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN A. MELLOR | : | |
| | : | CIVIL ACTION |
| v. | : | No. 11-5468 |
| | : | |
| ATKINSON FREIGHT LINES CORP. | : | |
| OF PENNSYLVANIA, t/d/b/a | : | |
| ATKINSON FREIGHT LINES | : | |
| | : | |

O'NEILL, J.                                                                                   April 12, 2012

**<u>MEMORANDUM</u>**

Now before me is the motion of defendant Atkinson Freight Lines Corp. of Pennsylvania, t/d/b/a Atkinson Freight Lines, to dismiss counts II and III of the amended complaint of plaintiff John A. Mellor for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, I will grant AFL's motion.

**BACKGROUND**

From June 2006 until August 3, 2009, Mellor was a full time Janitor/Maintenance Person for AFL, earning $13.00 per hour. Am. Compl. ¶¶ 16, 17. Mellor has a hearing impairment that significantly impairs his ability to hear. <u>Id.</u> ¶ 18. AFL was aware of plaintiff's hearing impairment. <u>Id.</u> ¶ 19. Mellor contends that AFL "deliberately ensured that Plaintiff was unable to successfully perform his job because the verbal instructions given to him were not properly heard" and that his employer refused to speak clearly to him and to ensure that he understood verbal instructions. <u>Id.</u> at ¶ 23. Mellor also alleges that as a result of his hearing impairment, he was mocked and humiliated by Sam Nucifore, his immediate supervisor, who "constantly stated

that Plaintiff's hearing disability was a significant problem." Id. ¶¶ 20, 21. Mellor contends that Nucifore referred to Mellor's hearing as "a pain in the ass" and that he "asked whether Plaintiff had ever considered getting a hearing aid." Id. ¶ 21-22. Mellor alleges that he complained to AFL that his hearing impairment was not being accommodated. Id. ¶ 24. Mellor's amended complaint does not identify how he made his complaint to AFL or the nature of the accommodation he sought. Mellor contends that he was retaliated against as a "[a]s a direct consequence of [his]complaints regarding his inability to properly hear instructions." Id. ¶¶ 24, 25. He asserts that he "was given extra work to do and a limited time within which to complete his tasks" and that he "was then criticized for not completing his work on time." Id. ¶ 26.

Plaintiff also alleges that he was retaliated against and harassed on a daily basis "by Scott Keck, the Manager of Bensalem Travel Plaza, who consistently referred to Plaintiff as a 'midget' and made sexual comments regarding his height." Id. ¶¶ 27, 28. In particular, Mellor's amended complaint identifies two incidents of alleged sexual harassment. First, around March 2009, "while Plaintiff was working in the men's restroom, Keck walked in and told Plaintiff to 'stand over here so I can rest my balls on your head and you can hold it (referring to his penis) until it needs me to shake it.'" Id. ¶ 31. Then, around May 2009, Keck told a truck driver, who wanted to pay for a shower, that "if you ask nicely, we will send in the midget [i.e., Plaintiff] to wash your back, too." Id. ¶ 32, 33. Mellor contends that Nucifore heard Keck's comments, laughed at them, and did nothing to prevent them. Id. ¶ 29, 30.

Mellor alleges that he "reported the harassing and discriminating comments to which he was being subjected to Rick Pulons, Operations Manager," but that "Pulons did not want to hear it." Id. ¶¶ 34, 35. Pulons allegedly "stated that Plaintiff was not completing his work to

satisfaction" and "discriminated and retaliated against" Mellor. Id. ¶ 38. Plaintiff contends that an AFL vice president named Marsha "was present on at least three of the occasions Plaintiff made complaints to Pulons and thus [was] aware of the harassment and discrimination Plaintiff experienced." Id. ¶ 36. Marsha took no remedial action. Id. ¶ 37.

Mellor was ultimately terminated by AFL. Id. ¶ 39. Mellor asserts that he was terminated "for allegedly not doing enough work when the amount of work he had to do was deliberately overwhelming" and that his termination was "in retaliation for complaints made about the discrimination and harassment he experienced by Keck and Nucifore." Id. ¶¶ 39, 40.

**STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a Court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949. When reviewing motions to dismiss in light of Twombly and Iqbal, "[f]irst, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950. "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

## DISCUSSION

**I.    Count Two: Sexual Harassment**

Count Two of Mellor's amended complaint asserts a claim for sexual harassment under Title VII. In order to establish his claim, Mellor must show that (1) he suffered intentional discrimination because of his gender; (2) the discrimination was severe or pervasive; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like

circumstances; and (5) there is a basis for employer liability.[1] See Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir.2001), citing Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990).[2] "Hostile work environment harassment occurs when unwelcome sexual conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment." Weston, 251 F.3d at 425-26, citing Meritor Savs. Bank FSB v. Vinson, 477 U.S. 57, 65 (1986). The target of the alleged harassment must "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discriminat[ion]* . . . because of . . . sex." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (emphasis and alterations in orignal).

A plaintiff can establish a same-sex sexual harassment claim "where there is evidence that the harasser sexually desires the victim," "where there is no sexual attraction but where the harasser displays hostility to the presence of a particular sex in the workplace," or where there is "evidence that the harasser's conduct was motivated by a belief that the victim did not conform to the stereotypes of his or her gender." Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 262 (3d Cir. 2001). "Based on the facts of a particular case and the creativity of the parties, other ways . . . may be available." Id. at 264. The conduct alleged in Mellor's amended complaint, while vulgar, is not sufficient to set forth a plausible claim that Mellor was discriminated against

---

[1] Keck is not alleged to have been an employee of AFL and although Mellor's amended complaint alleges that Keck's comments were made within earshot of Nucifore, it does not demonstrate how Keck's conduct should be imputed to AFL.

[2] While the Andrews Court stated that the discrimination in question must have been "pervasive and regular," in 2006 the Court of Appeals adopted the "severe or pervasive standard" followed by the United States Supreme Court. See Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006), citing Pa. State Police v. Suders, 542 U.S. 129, 133 (2004).

because of his gender.  Title VII does not set forth "a general civility code for the American workplace"  Oncale, 523 U.S. at 80.

Plaintiff's amended complaint does not allege that Keck,[3] who made harassing remarks, or Nucifore, who tolerated them, were sexually attracted to Mellor.  Mellor does not claim that the alleged harassment by Keck or Nucifore resulted from their discontent with having a male in the role of janitor/maintenance person.  Nor does he allege that Keck or Mellor's conduct was motivated by a belief that Mellor failed to conform to a gender stereotype.  Other than the sexual content of Keck's alleged remarks there is nothing in the amended complaint to support a reasonable inference that the remarks were directed at Mellor on account of his gender. "Although explicit sexual content or vulgarity may often take a factfinder a long way toward concluding that harassing comments were in fact based on gender, . . . this need not necessarily be the case."  Johnson v. Hondo, Inc., 125 F.3d 408, 412 (7th Cir. 1997).

I will dismiss Count Two of Mellor's amended complaint.  To the extent that he is able to allege facts to meet the standard for same-sex sexual harassment set forth in Bibby, Mellor may amend his complaint.  See Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000) (holding district court should not dismiss a plaintiff's claims "without either granting leave to amend or concluding that any amendment would be futile").

## II.   Count Three: Retaliation

Count Three of Mellor's amended complaint asserts a claim for retaliation based on disability and sexual harassment.  To establish a prima facie case of retaliation under the ADA or

---

[3]   Although Keck's alleged conduct is central to Mellor's sexual harassment claim against AFL, I note again that Keck is not alleged to have been an employee of AFL

under Title VII, Mellor must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. See Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006) (Title VII retaliation); Larkin v. Methacton Sch. Dist., 773 F. Supp. 2d 508, 529-30 (E.D. Pa. 2011) (ADA retaliation). Formal EEOC complaints as well as informal complaints to management may qualify as protected activity for purposes of a retaliation claim. Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006). Temporal proximity between a protected activity and an adverse employment action may be sufficient to create an inference of a causal connection in some cases, but it must be "unusually suggestive" to do so. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007). For example, it has been held that two days between the protected activity and the alleged retaliation sufficed to support an inference of a causal connection between the two. Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989). In contrast, a two-month lapse between protected activity and an adverse employment action has been held to be insufficient to support a claim of retaliation. Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760-61 (3d Cir. 2004).

     I find that the allegations in Mellor's amended complaint are insufficient to support his claim for retaliation to the extent that it is based on disability. A good faith request for an accommodation constitutes protected activity under the ADA. Larkin v. Methacton Sch. Dist., 773 F. Supp. 2d 508, 529-30 (E.D. Pa. 2011), citing Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2003). Mellor contends that he complained to AFL about its failure to accommodate his hearing impairment. Am. Compl. ¶ 24. The amended complaint does not identify what accommodation, if any, Mellor sought for his hearing impairment. See Williams,

380 F.3d at 759 n.2 (3d Cir.2004) ("[A] plaintiff need only show that she had a reasonable, good faith belief that she was entitled to request the reasonable accommodation she requested.").

Nor does it identify when he made his complaint or whether he made his complaint to a supervisor. Mellor's threadbare claim that he "complained to AFL" is insufficient to allege a protected activity. Even if it were, his amended complaint does not sufficiently allege a causal connection between his complaint that AFL failed to accommodate his hearing impairment and any alleged adverse action. There are no allegations in the amended complaint to demonstrate an unusually suggestive temporal connection between Mellor's complaint of failure to accommodate and any alleged adverse employment action and Mellor has not alleged any other facts to establish a causal link.

  I also find that Mellor's allegations are insufficient to support his claim for retaliation under Title VII. "[A]n employer [may not] 'discriminate against' an employee . . . because that individual 'opposed any practice' made unlawful by title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." Burlington Northern & Santa Fe Rwy. v. White, 548 U.S. 53, 56 (2006), quoting 42 U.S.C. § 2000e-3(a). Mellor asserts that he "reported the harassing and discriminating comments to which he was being subjected to Rick Pulons, Operations Manager," and that Marsha, an AFL Vice President was present on at least three of the occasions when Mellor complained to Pulons.[4] Id. at ¶ 34. First, as set forth above, Mellor's allegations are insufficient to establish that the complained of conduct was

---

   [4] It is not clear from the amended complaint whether this allegation also refers to the comments made by Nucifore about Mellor's hearing impairment.

unlawful under Title VII.  Second, even his allegations were sufficient to establish that he complained about conduct that was unlawful under Title VII, Mellor's amended complaint does not sufficiently allege a causal connection between his complaints to Pulons and Marsha and his termination.

The timing of the events alleged in the amended complaint is not so close as to be unusually suggestive of retaliation.  Although the amended complaint states that Keck's allegedly harassing conduct occurred in March and May of 2009, Mellor does not identify when he made his alleged complaints to Pulons.  If Mellor complained to Pulons at the time of the alleged harassing conduct, he was not terminated until August 3, 2009, more than two months later.  Because Mellor's amended complaint does not allege any other facts to support an inference that AFL terminated him because of his complaints to Pulons, I find that his amended complaint is insufficient to allow for an inference that his termination was causally connected to Mellor's complaints to Pulons.

I will dismiss Count Two of Mellor's amended complaint.  To the extent that Mellor is able to allege sufficient facts set forth a claim of retaliation, he may amend his complaint.  See Shane, 213 F.3d at 116 (holding district court should not dismiss a plaintiff's claims "without either granting leave to amend or concluding that any amendment would be futile").

An appropriate Order follows.